IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**CHARLES NANCE**                                                                                          **PLAINTIFF**

**v.**                                           **No. 1:20CV15-GHD-DAS**

**JAMES T. KITCHENS, ET AL.**                                                       **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Charles Nance, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that, in 2017, the defendants acted together to have his bond revoked. For the reasons set forth below, this case will be dismissed for failure to state a claim upon which relief could be granted.

**Factual Allegations**

In 2017, the plaintiff, Charles Nance, faced state drug charges in Clay County, Mississippi. A & A Bonding Company originally posted a $15,000 bond, but the court increased the bond to $60,000, and he bonded out through the Sheriff's Department. On his court date, Mr. Nance had many serious health problems and needed medicine. He alleges that, while in court waiting for the Judge to take up his case, he asked Chief Deputy Ramirez if he could leave the courthouse to get his medicine, and Ramirez told him he could. So, Mr. Nance picked up his prescription from the doctor's office, dropped it off at Walmart, then went home to get the money to pay for the medicine. However, when he opened the door to leave his home "the police were everywhere, led by Chief Deputy Ramirez."

According to Mr. Nance, by the time he saw the police waiting for him, he had only been away from the courthouse for 20-25 minutes.  He was arrested for violating the terms of his bond agreement – by not being in court when his case was called.  His bond was revoked, and he believes that his defense against the criminal charges against him was hampered by his pretrial detention.

Mr. Nance alleges that, in revoking his bond, Judge Kitchens conspired with the other defendants to hamper his defense.  Nance also alleges that Attorney Mark Cliett, his appointed counsel, conspired with the other defendants ensure his bond was revoked by knowing the false conditions leading to revocation – and failing to have his bond reinstated.  According to Nance, Larry Edwards, of A & A Bail Bonds, also conspired to have his bond revoked because, according to Nance, his bond was through the Clay County Sheriff's Department – not A & A Bail Bonds.  Mr. Nance sued Clay County, Mississippi because he believes that the county is "responsible for the actions of Clay County, Mississippi, employees."  Doc. 6-2 at 2.

As to Mr. Nance's bond, he was arrested on four counts of sale of a controlled substance as a habitual offender and, on May 20, 2014, was given a $15,000 bond to appear in court on July 14, 2014; Larry Edwards d/b/a/ A & A Bail Bonds was the surety.  Doc 16 at 21, 23, 31.  On his Waiver of Arraignment and Entry of Plea, dated July 15, 2014 (the day after the court appearance listed on the May 20, 2014, bond documents), a $15,000 bond was recommended, and A & A Bonding Company acted as surety for that bond.  Doc. 16 at 19-20.  However, the court's Order of July 15, 2014, set the bond at $60,000, Doc. 16 at 33, and the plaintiff and Clara Nance (the surety) signed a bond agreement for $60,000 on July 18, 2014.  Thus, A & A Bonding Company held a $15,000 bond, while the State held a $60,000 bond to secure Mr. Nance's appearance.  Either way, he was required by court order to appear before the Circuit Court at the appointed time, and his appearance was secured by at least one bond agreement.

**Mr. Nance's Allegations Fail on the Merits**

The gravamen of the first of Mr. Nance's allegations is that Chief Deputy Ramirez deceived him by telling him he had permission to leave the courthouse to procure medications for his medical conditions. The second allegation is that the defendants conspired to revoke his bond on false pretenses – because his bond agreement was not with A & A Bonding Company (as stated in various documents), but with the Clay County Sheriff's Department. As discussed below, these allegations must be dismissed for want of substantive merit. In addition, Judge Kitchens must be dismissed from this suit because he enjoys absolute judicial immunity. Further, the public defender must be dismissed because he is not a state actor and is thus not a proper defendant under 42 U.S.C. § 1983. Neither is the bail bondsman a state actor, and he must be dismissed for that reason. Sheriff Eddie Scott must also be dismissed because the plaintiff has sued him only in his capacity as a supervisor – and the plaintiff has not alleged that the Sheriff established a policy or custom giving rise to the alleged constitutional violations.

Finally, Mr. Nance was required to appear before the Clay County Circuit Court *by July 15, 2014, order of that court*:

> 4. The Defendant's trial is set on October 7, 2014, at 9:00 a.m.
>
> 5. The Defendant acknowledges that his failure to appear on the above trial date, or for any subsequent trial setting, may result on the Defendant being tried in his absence.

Doc. 16 at 33. Judge Howard signed that order, as did the prosecutor and Mr. Nance's defense counsel. *Id*. As the court issued the order to appear, Mr. Nance need the *court's* permission, not that of law enforcement (including Chief Deputy Ramirez), if he wished to be absent when the court called his case. Mr. Nance had signed multiple bond agreements acknowledging the requirement that he appear – and that his surety may lose assets if he failed to do so.

**Absolute Judicial Immunity**

As a judicial officer, defendant Judge James T. Kitchens is cloaked with absolute judicial immunity and must be dismissed from this case. Under the doctrine of judicial immunity, judicial officers are absolutely immune from civil liability for acts performed in the exercise of their judicial function. *Mireles w. Waco*, 502 U.S. 9, 10 (1991). Indeed, "[j]udicial immunity is an *immunity from suit* and not just from the ultimate assessment of damages." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (emphasis added). Judicial immunity may be pierced in two circumstances: (1) "a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity"; and (2) "a judge is not immune from actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Bowling v. Roach*, No. 19-41003, 2020 WL 2838622, at *3 (5th Cir. May 29, 2020), *quoting Mireles v. Waco*, 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Four factors determine whether a judicial officer's actions are judicial in nature: (1) whether the acts are a normal judicial function; (2) whether the acts occurred in a courtroom or other judicial space; (3) whether the complained-of acts relate to a case pending before the judicial officer; and (4) whether the acts relate directly to an appearance before the judicial officer in his official capacity. *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993).

Section 1983 also provides absolute judicial immunity to judicial officers against claims for injunctive relief:

> [I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Judges also enjoy absolute immunity from civil claims for damages in *Bivens* actions. *Villegas v. Galloway*, 458 F. App'x 334, 337 (5th Cir. 2012). Absolute judicial immunity even extends to *Bivens* claims for injunctive relief:

> More recently, courts have extended this absolute judicial immunity to *Bivens* suits for injunctive relief. *See, e.g., Bolin v. Story,* 225 F.3d 1234, 1242–43 (11th Cir. 2000); *Mullis v. U.S. Bankr.Ct. for Dist. of Nev.,* 828 F.2d 1385, 1391–94 (9th Cir.1987); *Emerson v. United States,* No. 12–884, 2012 WL 1802514, at *3 (E.D.La. Apr. 30, 2012); *Boyd v. Vance,* No. 09–7643, 2010 WL 235031, at *2 (E.D.La. Jan. 13, 2010); *Wightman v. Jones,* 809 F.Supp. 474, 479 (N.D.Tex. Dec. 7, 1992). In so doing, these courts have cited policy considerations as well as congressional amendments to Section 1983 law extending immunity against such claims to suits for injunctive relief in most circumstances. *See, e.g., Wightman,* 809 F.Supp. at 476–79.

*Thibodeaux v. Africk*, No. CIV.A. 14-921, 2014 WL 3796078, at *3 (E.D. La. July 30, 2014).

Our sister court in the Southern District has come to the same conclusion, holding, "judicial Defendants are absolutely immune from suit for monetary damages as well as equitable relief." *Edmonson v. Lee*, No. 3:08CV149-LTS, 2008 WL 2080912, at *3 (S.D. Miss. May 9, 2008). This court also recognizes absolute judicial immunity for all types of suits, whether grounded in law or equity.

In this case, the plaintiff's allegations against Judge Kitchens arise out of his actions carried out in the administration of the criminal case. Clearly, the actions were judicial in nature. Further, the plaintiff has not alleged that Judge Kitchens acted in the complete absence of all jurisdiction. As such, Judge Kitchens enjoys absolute judicial immunity from suit, and the plaintiff's claims against him will be dismissed.

### Public Defenders Are Not State Actors – And Are Not Subject to Liability Under 42 U.S.C. § 1983

Mr. Nance has sued Attorney Mark Cliett, his public defender, alleging that Cliett failed to act to have his bond restored. However, a public defender does not act under color of state law

when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding. *Polk County, Iowa v. Dodson*, 454 U.S. 312 (1981). Indeed, Mr. Cliett was not acting as the State's advocate, but its adversary. *Id*. In this case, Mr. Nance alleges that Mr. Cliett failed to challenge the revocation of his bond – certainly part of a lawyer's traditional functions as counsel. Hence, the plaintiff's allegations against Mark Cliett will be dismissed for failure to state a claim upon which relief could be granted.

## Sheriff Eddie Scott: Supervisor Liability

The plaintiff's allegations against Sheriff Eddie Scott arise out of his role as a supervisor; as such, the claims must be dismissed. A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). A § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007). There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, and (2) when he implements an unconstitutional policy that results in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for failure to supervise his subordinates – even when he is present on the scene – because, after *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir.

2011).

In this case, the plaintiff does not allege that Sheriff Eddie Scott had any personal involvement or was causally connected to the incident in any way. As such, the plaintiff's allegations against Sheriff Scott will be dismissed for failure to state a constitutional question.

### Bail Bondsman Not a State Actor Under 42 U.S.C. § 1983

The plaintiff alleges that Larry Edwards d/b/a/ A&A Bail Bonds, a private actor, conspired with state actors to violate his constitutional rights. The Fifth Circuit has outlined the rule to follow to determine whether private actors may be sued under 42 U.S.C. § 1983:

> In order to hold [private actors] liable on [a] Section 1983 claim, they must have engaged in a conspiracy with state actors to violate [the plaintiff's] constitutional rights. *Cinel v. Connick,* 15 F.3d 1338, 1343 (5th Cir. 1994). To make such a claim actionable, the private and the public actors must have entered into an agreement to commit an illegal act, and a plaintiff's constitutional rights must have been violated. *Id.* A plaintiff must "allege specific facts to show an agreement." *Priester v. Lowndes County,* 354 F.3d 414, 421 (5th Cir. 2004).

*Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008.) Mrs. Tebo, the plaintiff, was civilly committed by her two sons, and alleged that they and others conspired "to have her 'civilly committed without following the civil commitment statutes.'" *Id*. She further alleged that they "violated her statutory rights by filing an affidavit containing false statements about her behavior, by falsely claiming they were entitled to pauper status, and by causing an evaluation to be conducted prior to a court's reviewing the affidavit for sufficiency." *Id*. In other words, she alleged that her two sons falsified an affidavit regarding her behavior, and they and others then failed to follow the correct commitment procedures as outlined in the statute. Mrs. Tebo's § 1983 claim failed because her "allegations … [did] not allege specific facts to show that there … was an agreement between the private and public defendants to commit an illegal act. *Tebo,* 550 F.3d at 497 (internal quotations omitted). The plaintiff in the present case faces the same difficulty.

The present case is legally indistinguishable from *Tebo*. In this case Mr. Nance alleges that, in 2017, the defendants acted together to have his bond revoked. He was arrested on four counts of sale of a controlled substance as a habitual offender. As set forth above, A & A Bonding Company held a $15,000 bond, while the State held a $60,000 bond to secure Mr. Nance's appearance in court. The Clay County Circuit Court issued an order for Mr. Nance to appear in court at the appointed time; the holder of the appearance bond (whether $15,000 or $60,000) had no effect on the requirement to appear. Thus, whether Mr. Nance's presence was secured by the $15,000 bond held by A & A Bonding Company or the $60,000 held by the Clay County Sheriff's Department, he was required to appear before the court at the appointed time.

### The Plaintiff's Allegations Against Chief Deputy Ramirez For Conspiracy to Have His Bond Revoked Fail to State a Constitutional Claim

Mr. Nance alleges that Chief Deputy Ramirez told him he could leave the courtroom on the day the Clay County Circuit Court ordered him to appear. This allegation fails to state a constitutional claim because, even if Mr. Ramirez told Nance that he could leave the courtroom, Mr. Ramirez did not have the authority to authorize Mr. Nance to be absent from court on the date he was ordered to appear. Only the Clay County Circuit Court had such authority, and Mr. Nance did not get permission from the court to be absent. On July 15, 2014, the Clay County Circuit Court issued an order "remand[ing] [Mr. Nance] to the custody of the Sheriff unless lawful approved bond is posted in the amount of $60,000." Doc. 16 at 33. The order further stated that he was required to "appear on the above trial date, *or for any subsequent trial setting*." *Id*. (emphasis added).

Three days later, as a result of that order, Mr. Nance entered into a $60,000 bond agreement with the Sheriff's Department – and thus knew the terms of the agreement – including the requirement to appear in court at the appointed time:

- 8 -

> We, Charles Nance, Principal, and Clara Nance, Sureties, agree to pay the State of Mississippi $60,000 Dollars, unless the said Charles Nance *shall appear at the next term of the Circuit Court of Clay County, and there remain from day to day and term to term until discharged by law* to answer the charges of Sale of Meth – 4 cts. (Habitual).

Doc. 16 at 32 (emphasis added). Charles Nance signed the bond agreement, as did the surety, Clara Nance. Mr. Nance thus knew that he was under *court order* to appear before the Clay County Circuit Court – and that he and Clara Nance had pledged to pay $60,000 to the State of Mississippi if he failed to appear at the appointed place and time.

Nance knew he had to be in Clay County Circuit Court that day, as he was there. Mr. Nance has not produced a court order or transcript showing that he obtained permission from the court to be absent when his case was called. Thus, no matter what Chief Deputy Ramirez told Mr. Nance (who is no stranger to the criminal justice system), when he left the courthouse without court approval on April 10, 2017, he knew that he was in violation of the court's order for him to be there. He violated the terms of the court order and the bond agreement, and those terms were enforced.

Mr. Nance mentions that the April 10, 2017, Judgment Nisi and the Scire Facias of the same date list A & A Bail Bonds, rather than the State of Mississippi (as approved by Sheriff Eddie Scott on July 18, 2014), as surety for the $60,000 bond. It is unclear whether this is a scrivener's error, or whether A & A Bail Bonds became the surety before April 10, 2017, but this distinction is irrelevant. Mr. Nance has acknowledged that he was required to appear before the Clay County Circuit Court on April 10, 2017, that his presence was secured by a $60,000 bond, and that he was not present when the court called his case for trial on that date. No matter who held the bond, Mr. Nance was in violation of the court's July 15, 2014, order to appear for trial. Further, Mr. Nance has not alleged that he or Clara Nance forfeited any money or property as a result of his failure to appear that day. It appears, instead, that the court simply revoked his bond and ordered that he be held in custody until trial.

Finally, Mr. Nance has offered nothing to show why the various defendants in this case, including his own attorney, would conspire to have his bond revoked. The alleged conspirators are a diverse group (trial judge, appointed counsel, bail bondsman, Sheriff, and Chief Deputy) and the court can discern none whose interests might align with revocation of Nance's bond. For these reasons, Mr. Nance's allegations against all of the defendants regarding a conspiracy to have his bond revoked will be dismissed for failure to state a claim upon which relief could be granted.

## Conclusion

For the reasons set forth above, the instant case will be dismissed prejudice for failure to state a claim upon which relief could be granted. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 4th day of June, 2021.

　　　　　　　　　　　　　　　　　　　　　　　/s/ Sen H. Davidson
　　　　　　　　　　　　　　　　　　　　　　　SENIOR UNITED STATES DISTRICT JUDGE